UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT J. WENTWORTH, II an individual,

       Plaintiff,

vs.

MOTOR CITY WASH WORKS, INC.,
a domestic corporation,

       Defendant.
_____/

Case No.
Hon.

Edmund S. Aronowitz (P81474)
Attorney for Plaintiff
STERLING ATTORNEYS AT LAW, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
earonowitz@sterlingattorneys.com
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff Robert Wentworth, for his Complaint and Jury Demand against Defendant Motor City Wash Works submits as follows:

### JURISDICTIONAL ALLEGATIONS

1.    This is an action for disability discrimination and retaliation under the Americans with Disabilities Act, 42 USC 12101 *et seq.*, and the Michigan Persons with Disabilities Civil Rights Act, MCL 31.1101, *et seq.*

2. Plaintiff Robert J. Wentworth II is an individual residing in Howell, Michigan.

3. Defendant Motor City Wash Works, Inc. is a Michigan corporation with its principal place of business in Wixom, Michigan.

4. Defendant is an employer and covered entity as defined by the Americans with Disabilities Act, 42 USC 12101 *et seq.*

5. Defendant is also an employer as defined by the Michigan Persons with Disabilities Civil Rights Act, MCL 31.1101, *et seq.*

6. Plaintiff was a qualified individual who applied for a job with Defendant and was discriminated against on the basis of disability or on the basis of Defendant regarding Plaintiff as disabled, as Plaintiff uses a service dog to alert for seizures and post traumatic stress disorder linked to a traumatic brain injury Plaintiff sustained as a service member with the Army Reserve while deployed in Iraq, and Defendant explicitly refused to hire Plaintiff on account of his service dog and need for reasonable accommodations.

7. After Plaintiff filed a charge of discrimination with the EEOC, Defendant retaliated against Defendant by taking adverse actions against his spouse and father who were employed by Defendant and further filed a meritless request for protective order against Plaintiff.

8. This Court has federal question jurisdiction over Plaintiff's federal claims under 28 USC 1331 because this action arises under the laws of the United States.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 USC 1367(a).

10. Venue is proper in this district under 28 USC 1391(a)(2), (b)(1), and (b)(2) because a substantial part of the events giving rise to this claim occurred in this judicial district and defendant resides in this judicial district.

11. Plaintiff timely filed a charge of disability discrimination with the EEOC on or about October 17, 2022.

12. Plaintiff timely filed his complaint with this Court within 90 days of receiving his EEOC right to sue notice dated May 9, 2024.

## GENERAL ALLEGATIONS

13. Plaintiff enlisted with the Army Reserve in or around 2002.

14. Between 2004 and 2005, Plaintiff was deployed as a military police officer at Camp Delta, Guantanamo Bay, Cuba, a super-max facility housing alleged terrorists detained during the global war on terror.

15. In September 2006, Plaintiff deployed to Iraq.

16. While deployed, Plaintiff conducted over 250 military police missions and multiple infantry foot patrols

17. On June 25, 2007, Plaintiff was gravely injured while on patrol in Bayji, Iraq by a Vehicle Borne Improvised Explosive Device ("VBIED").

18. Among other wounds, the VBEID caused Plaintiff to sustain a traumatic brain injury ("TBI"), a fractured back, and a fractured neck.

19. Plaintiff was also diagnosed with post-traumatic stress disorder ("PTSD") associated with his service.

20. On December 27, 2009, Plaintiff was honorably discharged from the Army Reserve under a medical retirement.

21. In late 2021, Plaintiff began at risk for, and occasionally experience, grand mal seizures from epilepsy, with his first seizure on December 16, 2021.

22. Plaintiff's seizures are being investigated for connection to his TBI.

23. Plaintiff relies on his service animal – a dog named "Monster" – to alert during epileptic seizures so he can obtain appropriate medical intervention.

24. Monster is also trained to intervene during symptoms of PTSD.

25. Monster has saved Plaintiff's life from potentially fatal seizures twice already, and in order for him to work safely, Plaintiff relies on potential employers to provide the reasonable accommodation of allowing him to keep his service animal with him while at work.

26. Plaintiff first approached MCWW to seek employment in late December 2021 after he completed his Bachelors of Business Administration degree from U of M Flint with High Honors and a GPA of 3.9.

27. Plaintiff discussed his qualifications, prior experience, and interests in various roles at Defendant with Defendant's CEO and CFO, Lee and Richard Belanger, who are also Plaintiff's older cousins on his mother's side by about a decade.

28. Instead of giving Plaintiff a fair shot at employment and an equal opportunity to get a job, the Belangers suggested instead that Plaintiff pursue self-employment as the owner of an independent car wash with familial financial backing and further offered Plaintiff independent contractor work that Plaintiff ably performed.

29. The independent car wash suggestion did not materialize, leaving Plaintiff again in the position of needing to seek employment.

30. In August 2022, Plaintiff applied for a position as Social Media Manager for Defendant.

31. Plaintiff was qualified for the job as Defendant's Social Media Manager.

32. Indeed, Plaintiff had previously remotely performed the job functions of Social Media Manager for Defendant as an independent contractor in or around January 2022.

33. Plaintiff was subject to an adverse employment action in that Defendant rejected Plaintiff from consideration for employment and failed to consider reasonable accommodations for Plaintiff's employment.

34. Plaintiff was known by Defendant to have a disability, including TBI and PTSD.

35. Defendant specifically knew Plaintiff relied on a service dog.

36. Defendant further specifically knew of Plaintiff's military service history and injuries.

37. Plaintiff specifically advised Defendant of his need for reasonable accommodations on account of disability prior to and during the application process for a job with Defendant.

38. Lee Belanger explicitly stated that he did not want to hire Plaintiff to work for MCWW because Plaintiff had a service dog and Lee did not want to deal with Plaintiff's epilepsy, PTSD, or any of his other health issues.

39. Lee Belanger explicitly stated that he did not hire Plaintiff because he did not "want to get stuck with him" and go through a formal process of firing him under the misguided belief that Plaintiff's service-related injuries and

6

disabilities would prevent him from being a valuable contributor to the business of MCWW.

40. Lee stated he did not want to "deal with" any accommodations or visible disabilities, including Plaintiff's service dog and his seizures, or his PTSD.

41. Richard Belanger confirmed MCWW would not hire Plaintiff because of his disabilities.

42. Lee Belanger also stated he was concerned about having to make accommodations for Plaintiff's disabilities, including adjusting Plaintiff's work schedule, allowing Plaintiff's service dog in the office, locating Plaintiff near a bathroom, or allowing Plaintiff to work remotely when necessitated by symptoms from his TBI.

43. Defendant falsely claimed it did not hire Plaintiff for reasons unrelated to Plaintiff's disability.

44. Following Plaintiff's filing of a charge with the EEOC, Defendant threatened to fire Plaintiff's spouse who also worked at MCWW, filed a meritless claim for a protective order that resulted in Plaintiff losing another employment opportunity, and kicked Plaintiff's father out of the business.

## COUNT I

## DISABILITY DISCRIMINATION
## IN VIOLATION OF ADA, 42 USC 12112

45. Plaintiff incorporates the preceding paragraphs by reference.

46. Plaintiff suffers from a disability as defined in the Americans with Disabilities Act, 42 USC 12101, *et seq*.

47. Plaintiff also has a record of suffering from a disability as defined in the Americans with Disabilities Act, 42 USC 12101, *et seq*.

48. Defendant knew or had reason to know of Plaintiff's disability.

49. Plaintiff was qualified for a position of employment with Defendant.

50. Defendant discriminated against Plaintiff with respect to his application for employment because of Plaintiff's disability or because Defendant perceived him to be disabled.

51. Defendant treated similarly situated job applicants who did not have disabilities and who were not regarded as disabled more favorably than Plaintiff.

52. Defendant refused to hire Plaintiff on the basis of his disability.

53. Defendant's alleged non-discriminatory reasons for not hiring Plaintiff were pretextual.

54. Defendant's discrimination denied Plaintiff the opportunity for employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of the Americans with Disabilities Act, 42 USC 12101, *et seq*.

55. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injuries and is entitled to:

    A. compensation for his loss of wages;

    B. compensation for loss of fringe benefits;

    C. compensation based on his earning potential;

    D. emotional distress damages;

    E. punitive damages; and

    F. other incidental and consequential damages, including attorney fees.

## COUNT II

### DISABILITY DISCRIMINATION
### IN VIOLATION OF MPWDCRA, MCL 31.1101

56. Plaintiff incorporates the preceding paragraphs by reference.

57. Plaintiff suffers from a disability as defined in the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq*.

9

58. Plaintiff also has a history of suffering from a disability as defined in the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq*.

59. Defendant knew or had reason to know of Plaintiff's disability.

60. Plaintiff was qualified for a position of employment with Defendant.

61. Defendant discriminated against Plaintiff with respect to his application for employment because of Plaintiff's disability or because Defendant perceived him to be disabled.

62. Defendant treated similarly situated job applicants who did not have disabilities and who were not regarded as disabled more favorably than Plaintiff.

63. Defendant refused to hire Plaintiff on the basis of his disability.

64. Defendant's alleged non-discriminatory reasons for not hiring Plaintiff were pretextual.

65. Defendant's discrimination denied Plaintiff the opportunity for employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq*.

66. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered injuries and is entitled to:

      A.    compensation for his loss of wages;

      B.    compensation for loss of fringe benefits;

      C.    compensation based on his earning potential;

      D.    emotional distress damages;

      E.    other incidental and consequential damages, including attorney fees.

## COUNT III

### RETALIATION AND INTERFERENCE
### IN VIOLATION OF ADA, 42 USC 12203

67. Plaintiff incorporates the preceding paragraphs by reference.

68. Plaintiff engaged in a protected activity by filing a charge with the EEOC to complain of disability discrimination.

69. Defendant took adverse actions against Plaintiff by not further considering his employment application and taking adverse actions against his family members who were employees of Defendant on the basis of Plaintiff's complaint about disability discrimination.

70. Defendant's alleged reasons for not further considering Plaintiff's employment application and taking adverse actions against his family members who were employees of Defendant were a pretext for disability discrimination.

71. Defendant's retaliation denied Plaintiff the opportunity for employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of the Americans with Disabilities Act, 42 USC 12101, et seq.

72. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injuries and is entitled to:

    A. compensation for his loss of wages;

    B. compensation for loss of fringe benefits;

    C. compensation based on his earning potential;

    D. emotional distress damages;

    E. punitive damages; and

    F. other incidental and consequential damages, including attorney fees.

## COUNT IV

## RETALIATION
## IN VIOLATION OF THE MPWDCRA, MCL 31.1101

73. Plaintiff incorporates the preceding paragraphs by reference.

74. Plaintiff engaged in a protected activity by filing a charge with the EEOC to complain of disability discrimination.

75. Defendant took adverse actions against Plaintiff by not further considering his employment application and taking adverse actions against his family members who were employees of Defendant on the basis of Plaintiff's complaint about disability discrimination.

76. Defendant's alleged reasons for not further considering Plaintiff's employment application and taking adverse actions against his family members who were employees of Defendant were a pretext for disability discrimination.

77. Defendant's retaliation denied Plaintiff the opportunity for employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq*.

78. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injuries and is entitled to:

    A.    compensation for his loss of wages;

    B.    compensation for loss of fringe benefits;

    C.    compensation based on his earning potential;

    D.    emotional distress damages;

    E.    punitive damages; and

    F.    other incidental and consequential damages, including attorney fees.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant, in whatever amount Plaintiff is found to be entitled, together with punitive damages, interest as an element of damages, statutory interest, and attorney fees and costs.

## JURY DEMAND

Plaintiff Robert J. Wentworth II, by his attorneys Sterling Attorneys at Law, P.C., demands a trial by jury on all such claims so triable.

    Respectfully submitted,

    STERLING ATTORNEYS AT LAW, P.C.

    By:  /s/Edmund S. Aronowitz
        Edmund S. Aronowitz (P81474)
        Attorneys for Plaintiff
        33 Bloomfield Hills Pkwy., Ste. 250
        Bloomfield Hills, MI 48304
        (248) 644-1500

Dated:  July 23, 2024